UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JPMORGAN CHASE BANK, N.A.,

Plaintiff,

v.

SFR INVESTMENTS POOL 1, LLC, *et al.*,

Defendants.

Case No. 2:14-cv-02080-RFB-GWF

**<u>ORDER</u>**

## I.    INTRODUCTION

This is a quiet title and wrongful foreclosure action brought by Plaintiff JPMorgan Chase Bank, N.A. ("Chase"). Chase, which was the beneficiary of a deed of trust encumbering certain real property in Las Vegas, Nevada, brought suit seeking declaratory, injunctive, and monetary relief against a homeowners association, a collection service, and the entity that purchased the property when the homeowners association foreclosed on it for unpaid assessments pursuant to Nevada's HOA lien statute, N.R.S. 116.3116.

This case raises a series of questions with respect to the constitutionality of N.R.S. 116.3116 and the validity of other challenges to various aspects of HOA foreclosure sales in Nevada. The case is now before the Court on several motions for summary judgment. For the reasons discussed below, the Court finds that N.R.S. 116.3116 is constitutional. The Court also rejects Chase's remaining challenges to the foreclosure sale that occurred in this case. Summary judgment is therefore granted in favor of Defendants on all claims.

## II.    BACKGROUND

### A.  Procedural History

Chase filed its Verified Complaint on December 9, 2014. ECF No. 1. In its Complaint,

Chase names the following Defendants: SFR Investments Pool I, LLC ("SFR"), The Preserves at Elkhorn Springs Homeowners Association, Inc. ("HOA"), ATC Assessment Collection Group, LLC ("ATC"), and Heather and Jason Reinhard ("the Reinhards"). After filing a Notice of Bankruptcy, the Reinhards were voluntarily dismissed from this action by Chase on April 15, 2015. ECF Nos. 25, 46.

In its complaint, Chase states that the Reinhards owned certain real property that was subject to a set of Covenants, Conditions, and Restrictions (CC&Rs) enforced by the HOA and that Chase was the beneficiary of a deed of trust encumbering that property. Chase alleges that the HOA foreclosed on the property pursuant to a lien for unpaid assessments and that SFR purchased the property at the resulting foreclosure sale. Chase claims that the foreclosure sale did not extinguish its deed of trust pursuant to Nevada's HOA foreclosure statutes, N.R.S. 116.3116 *et seq*.

Chase asserts the following causes of action in its Complaint: 1) Quiet Title/Declaratory Relief against all Defendants; 2) Permanent and Preliminary Injunction against SFR; 3) Wrongful Foreclosure – Commercial Unreasonableness against ATC and the HOA; 4) Wrongful Foreclosure – Violation of N.R.S. 116.3116 against ATC and the HOA; 5) Wrongful Foreclosure – Violation of N.R.S. 116.3102 against ATC and the HOA; 6) Negligence against ATC and the HOA; 7) Negligence Per Se against ATC and the HOA; 8) Breach of Contract against ATC and the HOA; 9) Misrepresentation against the HOA; 10) Unjust Enrichment against SFR; and 11) Waste against SFR.

SFR filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and a Motion to Expunge Lis Pendens on January 23, 2015, in which ATC and the HOA joined. ECF Nos. 18, 23. On April 1, 2015, Chase filed an opposition to the Motion to Dismiss as well as a Countermotion for Summary Judgment or, in the Alternative, Motion for Continuance under Fed. R. Civ. P. 56(d) against SFR. ECF No. 38. On the same date, Chase also filed an opposition and Countermotion for Summary Judgment against ATC and the HOA. ECF No. 40. The parties engaged in discovery, which closed on September 15, 2015. ECF No. 60. On December 14, 2015, Chase filed a Second Motion for Summary Judgment against all Defendants to which Chase

attached evidence obtained during discovery. ECF No. 69. Pursuant to an order from the Court, the parties filed supplemental briefs on February 8, 2016 addressing the applicability to this case of the Nevada Supreme Court's decision in <u>Shadow Wood HOA v. N.Y. Cmty. Bancorp, Inc.</u>, 366 P.3d 1105 (Nev. 2016).

### B.  Undisputed Facts

After reviewing the evidence submitted by the parties, the Court finds the following undisputed facts.

#### 1.  *Reinhard Loan and Deed of Trust*

On approximately August 21, 2008, the Reinhards purchased the real property located at 7400 Brittlethorne Avenue, Las Vegas, Nevada (the "Property"). On May 22, 2009, the Reinhards executed a Deed of Trust against the Property securing a loan in the amount of $406,000. The Deed of Trust identified MetLife Home Loans ("MetLife") as the lender, Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, and Fidelity National Title Agency as the trustee. The Reinhards' loan for the Property is insured by the Department of Housing and Urban Development (HUD), a department of the federal government. On February 17, 2012, MERS assigned its beneficial interest under the Deed of Trust to MetLife. On October 17, 2013, MetLife assigned its beneficial interest under the Deed of Trust to Chase.

#### 2.  *CC&Rs*

The Property is part of a planned community governed by the HOA. The HOA recorded a Declaration of Covenants, Conditions, and Restrictions (CC&Rs) against the Property on February 19, 1997. Section 17.3(b) of the CC&Rs requires that the HOA give prompt written notice to each "Eligible Mortgagee" and "Eligible Insured," as those terms are defined in the CC&Rs, of any delinquency in payment of HOA assessments for 60 days where the unit is subject to a first security interest. Section 18.3 contains a limited mortgage savings clause. It provides that the HOA has a lien for unpaid HOA assessments, and that "[e]xcept to the extent permitted under [N.R.S. 116.3116(2)], a lien under this Section is prior to all other liens and encumbrances except . . . a

first Security Interest on the Unit recorded before the date on which the assessment sought to be enforced became delinquent."

### 3. First HOA Foreclosure and Rescission

On July 25, 2011, the HOA recorded a Notice of Delinquent Assessment Lien against the Property. On September 1, 2011, Hampton & Hampton, on behalf of the HOA, recorded a Notice of Default and Election to Sell against the Property. On approximately October 7, 2011, MetLife, the Lender for the Reinhards' mortgage, tendered a payment of $1,973 to Hampton & Hampton for miscellaneous foreclosure expenses on behalf of the Reinhards. On October 21, 2011, Hampton & Hampton recorded a Notice of Rescission of the July 25, 2011 Lien.

### 4. Second HOA Foreclosure and Sale of Property

On June 22, 2012, ATC, on behalf of the HOA, recorded a Notice of Delinquent Assessment Lien against the Property. On July 25, 2012, ATC recorded a Notice of Default and Election to Sell against the Property. The Notice of Default and Election to Sell was mailed on August 1, 2012 to the Reinhards, MERS, and MetLife, among others. On July 10, 2014, ATC recorded a Notice of Sale against the Property. The Notice of Sale was mailed on July 8, 2014 to the Reinhards, MERS, MetLife Home Loans, and Chase, among others.

On August 5, 2014, ATC, on behalf of the HOA, conducted a foreclosure sale by public auction. SFR was the winning bidder at the foreclosure sale with a bid of $69,000. On August 14, 2014, a Trustee's Deed Upon Sale was recorded, reflecting the fact that the Property was sold to SFR. The Deed states that ATC "has complied with all requirements of law including, but not limited to, the elapsing of 90 days, mailing of copies of Notice of Delinquent Assessment Lien and Notice of Default and the Posting and Publication of the Notice of Sale."

## III.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a

motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. <u>Johnson v. Poway Unified Sch. Dist.</u>, 658 F.3d 954, 960 (9th Cir. 2011).

Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." <u>Id.</u> If it fails to carry this initial burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." <u>Id.</u> at 1102-03. If the movant has carried its initial burden, "the nonmoving party must produce evidence to support its claim or defense." <u>Id.</u> at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. <u>Nissan Fire</u>, 210 F.3d at 1102.

## IV.    DISCUSSION

### A.  Order of Disposition of Motions

The Court currently has several motions before it which were filed at different stages of the case. Defendants filed a Motion to Dismiss or, in the Alternative, a Motion for Summary Judgment as their initial response to the Complaint. Before discovery began, Chase filed a Countermotion for Summary Judgment or, in the Alternative, Motion for Continuance pursuant to Rule 56(d). After discovery closed, Chase filed a Second Motion for Summary Judgment.

1    In the interest of judicial economy and in light of the Court's inherent power to control its

2    own docket, the Court will address the parties' arguments at the summary judgment stage and will

3    consider all admissible evidence presented in the record. The Court therefore will address all

4    arguments raised in the parties' various summary judgment motions, considering evidence where

5    appropriate. Accordingly, the Court denies Chase's request for a Rule 56(d) continuance, as Chase

6    has already had the opportunity to conduct discovery and to use evidence from discovery in support

7    of its Second Motion for Summary Judgment.

8    Based upon its review, the Court grants summary judgment in Defendants' favor on all

9    claims. To the extent Defendants have not moved for summary judgment on a particular claim, the

10   Court grants it *sua sponte* because both sides have had a full and fair opportunity to conduct

11   discovery and present arguments on the issues involved. See Albino v. Baca, 747 F.3d 1162, 1176

12   (9th Cir. 2014) (en banc) ("If the record is sufficiently developed to permit the trial court to

13   consider summary judgment, and if the court finds that when viewing the evidence in the light

14   most favorable to a moving party the movant has not shown a genuine dispute of fact on [a

15   particular issue], it may be appropriate for the district court to grant summary judgment sua sponte

16   for the nonmovant on [that] issue."). The Court now considers each of the arguments raised by the

17   parties.

18

19   **B.  Overview of Nevada's HOA Lien Statute**

20   This case deals with the applicability and validity of Nevada's HOA lien statute, N.R.S.

21   116.3116, which confers liens to HOAs on homeowners' units for unpaid assessments,

22   construction penalties, and fines imposed against the owners of those units. The statute also

23   establishes the priority of the liens and provides a mechanism for their nonjudicial foreclosure.

24   Given the centrality of this statutory scheme to this case, the Court will lay out its structure in some

25   detail.

26   N.R.S. 116.3116 has recently been amended several times. As the HOA foreclosure sale

27   (and the legal effect of that sale, if any) took place in August 2014, the Court focuses its analysis

28   on the version of the statute that was in effect at that time. The Nevada Supreme Court settled

1   many aspects of the debate over the legal effect of this statute in September 2014 in SFR

2   Investments Pool 1, LLC v. U.S. Bank, holding in that decision that "N.R.S. 116.3116(2) gives an

3   HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust."

4   334 P.3d 408, 419 (Nev. 2014). More specifically, "N.R.S. 116.3116(1) gives an HOA a lien on

5   its homeowners' residences" for unpaid assessments and fines, and "N.R.S. 116.3116(2) elevates

6   the priority of the HOA lien over other liens." Id. at 410. This "superpriority" portion of an HOA

7   lien is limited, however. "As to first deeds of trust, NRS 116.3116(2) . . . splits an HOA lien into

8   two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the

9   last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is 'prior

10  to' a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is

11  subordinate to a first deed of trust." Id. at 411.

12      The Nevada Supreme Court has also recently clarified that the superpriority portion of the

13  HOA's lien for assessments does not include collection fees and foreclosure costs. Horizons at

14  Seven Hills v. Ikon Holdings, 373 P.3d 66 (Nev. 2016). In reaching its decision, the Court analyzed

15  the statutory text and scheme, a related provision in the Nevada Administrative Code, the

16  legislative history of the HOA lien statute, and an advisory opinion from the Nevada Department

17  of Business and Industry, Real Estate Division (NRED). Id. at 69-72. The Court concluded that

18  "the superpriority lien granted by NRS 116.3116(2) does not include an amount for collection fees

19  and foreclosure costs incurred; rather it is limited to an amount equal to the common expense

20  assessments due during the nine months before foreclosure." Id. at 72.

21      Chapter 116 of the Nevada Revised Statutes[1] details the procedures with which an HOA

22  must comply to initiate and complete a foreclosure on its lien.[2] First, the CC&Rs or other

23  declaration of the planned community must state that the association's lien may be foreclosed

24  according to the procedures set forth in the statute. N.R.S. 116.31162(1) (2014). Next, if a unit

25  owner has failed to pay assessments, the HOA must send a notice of delinquent assessment to the

26

27      [1] All references to the Nevada Revised Statutes in this section are to the statutes in effect at the time the relevant notices were sent in this case, unless otherwise noted.

28      [2] N.R.S. 116.3116 allows for an HOA lien to be foreclosed nonjudicially. SFR, 334 P.3d at 414-15.

owner by certified or registered mail containing "the amount of the assessments and other sums which are due in accordance with subsection 1 of N.R.S. 116.3116, a description of the unit against which the lien is imposed and the name of the record owner of the unit." N.R.S. 116.31162(1)(a) (2012).[3] If the owner has not paid within 30 days after the mailing of the notice of delinquent assessment, the HOA or its representative must record a notice of default and election to sell. N.R.S. 116.31162(1)(b) (2012). This notice must contain the same information as the notice of delinquent assessment and also must "[d]escribe the deficiency in payment," include the name and address of the person authorized to sell the unit, and contain an explicit warning that the owner can lose the home by failing to pay the amount due. Id. Finally, if the owner has failed to pay the amount specified in the notice of default and election to sell within 90 days, the association may proceed with a foreclosure sale in the manner prescribed by N.R.S. 116.31164 after mailing—by certified or registered mail, return receipt requested—a notice of sale to the unit's owner and the address of the unit. N.R.S. 116.311635 (2014).

The provisions following N.R.S. 116.3116 also impose specific notice requirements on HOAs and their representatives. Within 10 days of recording the notice of default and election to sell, the HOA or its representative must send a copy of the notice by first-class mail to, among others, "[e]ach person who has requested notice pursuant to N.R.S. 107.090 or 116.31168" and "[a]ny holder of a recorded security interest encumbering the unit's owner's interest who has notified the association, 30 days before the recordation of the notice of default, of the existence of the security interest." N.R.S. 116.31163(1), (2) (2012). In addition, the HOA or its representative must mail a copy of the notice of sale by certified or registered mail, return receipt requested, to the unit's owner and to "(1) [e]ach person entitled to receive a copy of the notice of default and election to sell notice under N.R.S. 116.31163" and "(2) [t]he holder of a recorded security interest or the purchaser of the unit, if either of them has notified the association, before the mailing of the notice of sale, of the existence of the security interest, lease or contract of sale, as applicable." N.R.S. 116.311635(1)(b) (2014). Moreover, "[t]he provisions of N.R.S. 107.090," which set forth

---

[3] The Court references the 2012 version of the statute because the HOA's notice of delinquent assessment and notice of default and election to sell were recorded in 2012. See Section II.B.3, supra.

notice requirements when a deed of trust is foreclosed, "apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed." N.R.S. 116.31168 (2014). N.R.S. 107.090, in turn, requires mailing of the notice of default and notice of sale—by registered or certified mail, return receipt requested and with postage prepaid—to "[e]ach person who has recorded a request for a copy of the notice" and "[e]ach other person with an interest whose interest or claimed interest is subordinate to the deed of trust." N.R.S. 107.090(3).

Finally, "[a] trustee's deed reciting compliance with the notice provisions of N.R.S. 116.31162 through N.R.S. 116.31168 'is conclusive' as to the recitals 'against the unit's former owner, his or her heirs and assigns, and all other persons.'" SFR, 334 P.3d at 411-12 (quoting N.R.S. 116.31166(2) (2014)). The foreclosure sale of a unit pursuant to the above notice provisions "vests in the purchaser the title of the unit's owner without equity or right of redemption." N.R.S. 116.31166(3) (2014).

In light of the foregoing, it is clear that absent the statute being found unconstitutional, the HOA's foreclosure of its lien on the Property for unpaid assessments, if properly conducted, extinguished Chase's Deed of Trust.

### C. Due Process Challenge to N.R.S. 116.3116

In its Countermotion for Summary Judgment, Chase argues that N.R.S. 116.3116 is unenforceable because it violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and is therefore facially unconstitutional. Unlike an as-applied challenge, which attacks the application of a statute to a specific set of facts, "a facial challenge is a challenge to an entire legislative enactment or provision." Hoye v. City of Oakland, 653 F.3d 835, 857 (9th Cir. 2011). A plaintiff succeeds in a facial challenge only by establishing "that the law is unconstitutional in all of its applications," and fails "where the statute has a plainly legitimate sweep." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008) (citation and internal quotation marks omitted).

The Court concludes that N.R.S. 116.3116 does not violate the Due Process Clause. First, the nonjudicial foreclosure that Chase challenges is not attributable to the state. Second, even if it

1    were, the Court would find that the statute satisfies the requirements of the Due Process Clause.

2    Finally, in any event, the Court would apply the doctrine of constitutional avoidance to interpret

3    the statute to comply with the Constitution.

4                                  ***1.  State Action Requirement***

5                                        a.   Applicable Law

6           The Fourteenth Amendment protects citizens from unlawful action by the government, but

7    does not regulate the conduct of private individuals or entities. Apao v. Bank of New York, 324

8    F.3d 1091, 1093 (9th Cir. 2003). Accordingly, "in cases involving foreclosures or seizures of

9    property to satisfy a debt, . . . the procedures implicate the Fourteenth Amendment only where

10   there is at least some direct state involvement in the execution of the foreclosure or seizure." Id.

11   The Supreme Court has repeatedly held that state action has two requirements: (1) "an alleged

12   constitutional deprivation caused by the exercise of some right or privilege created by the State or

13   by a rule of conduct imposed by the State or by a person for whom the State is responsible," and

14   (2) "that the party charged with the deprivation must be a person who may fairly be said to be a

15   state actor." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (internal quotation marks

16   omitted).[4]

17          The fact that a business is subject to state regulation "does not by itself convert its action

18   into that of the State for purposes of the Fourteenth Amendment." Id. at 52 (internal quotation

19   marks omitted). Moreover, "[a]ction taken by private entities with the mere approval or

20   acquiescence of the State is not state action." Id. Private entities are not subject to the requirements

21   of the Fourteenth Amendment "unless there is a sufficiently close nexus between the State and the

22   challenged action of the regulated entity so that the action of the latter may be fairly treated as that

23   of the State itself." Id. (internal quotation marks omitted). A "sufficiently close nexus" exists where

24   the state "has exercised coercive power or has provided such significant encouragement, either

25   overt or covert, that the choice must in law be deemed to be that of the State." Id. (quoting Blum

26   v. Yaretsky, 457 U.S. 991, 1004 (1982)). This nexus does not exist—and thus there is no state

27
     _____

28          [4] The second requirement—that "the party charged with the deprivation must be a person who may
     fairly be said to be a state actor"—applies with equal force even in cases asserting facial due process
     challenges to statutes. Id.

                                                - 10 -

1  action—where the action was taken "with the mere approval or acquiescence of the State." <u>Am.</u>

2  <u>Mfrs.</u>, 526 U.S. at 52.

3                    b.   The HOA's Foreclosure Does Not Constitute State Action

4         In this case, the Court finds that the state action requirement has not been satisfied by the

5  HOA's nonjudicial foreclosure sale carried out pursuant to N.R.S. 116.3116. Chase has

6  successfully established the first element of state action; the parties do not dispute that the

7  foreclosure sale, and the alleged extinguishment of Chase's interest in the Property, was "caused

8  by the exercise of some right or privilege created by the State." <u>Id.</u> at 50. Chase has not shown,

9  however, that the alleged deprivation was caused by a person fairly said to be a state actor.

10        The Court begins its analysis of whether a state actor was involved by identifying the

11 specific action by Defendants of which Chase complains. <u>Id.</u> at 51. Chase has brought suit against

12 SFR, the HOA, ATC, and the Reinhards—all private parties. Chase has not named any public

13 officials as defendants in this action, nor does it allege the direct involvement of any state officials

14 in the foreclosure. Chase does allege other issues with the sale, however. Chase asserts that the

15 sale was commercially unreasonable, that ATC did not include the super-priority portion of the

16 HOA lien in any of the pre-sale notices, that the sale does not extinguish Chase's interest under

17 the Deed of Trust, and that the sale is preempted by HUD's insurance interest. Thus, the Court

18 must analyze whether ATC's and the HOA's foreclosure on the Property, and SFR's action of

19 purchasing the Property at the foreclosure sale and claiming title to that property pursuant to N.R.S.

20 116.3116, are fairly attributable to the state.

21        The Court does not find that standard to be met in this case. As discussed in Section IV.B

22 above, Nevada's HOA lien statute authorizes, but does not require, HOAs to obtain a superpriority

23 lien against real property for nine months of unpaid assessments by following the procedures set

24 forth in N.R.S. 116.31162 through N.R.S. 116.31168. The decision to actually foreclose and

25 extinguish a prior recorded interest is made by private parties. There is no provision for

26 involvement by state officials in the foreclosure process other than the requirement that the HOA

27 file certain documents in the county recorder's office. The enactment of this statute is not enough

28 to constitute the exercise of "coercive power" or "significant encouragement" by the state so as to

constitute state action. <u>Am. Mfrs.</u>, 526 U.S. at 52. While the state's enactment of the statute "can in some sense be seen as encouraging" HOAs to foreclose according to the notice provisions in the statute, "this kind of subtle encouragement is no more significant than that which inheres in the State's creation or modification of any legal remedy." <u>Id.</u> at 53; <u>see also</u> <u>Tulsa Prof. Collection Servs., Inc. v. Pope</u>, 485 U.S. 478, 485 (1988) ("Private use of state-sanctioned private remedies or procedures does not rise to the level of state action.").

Chase's constitutional challenge must therefore be denied for failure to establish state action. <u>See</u> <u>Apao</u>, 324 F.3d at 1095 (holding that a lender's nonjudicial foreclosure conducted pursuant to state statute did not constitute state action, and noting that any procedural concerns due to the fact that the sale was conducted by a self-interested lender "do not relate to the threshold, and here dispositive question as to whether there was state action"); <u>Charmicor v. Deaner</u>, 572 F.2d 694, 695 (9th Cir. 1978) (holding that a trustee's sale conducted pursuant to Nevada's nonjudicial foreclosure statute did not amount to state action, and stating that "[t]he statutory source of the Nevada power of sale . . . does not necessarily transform a private nonjudicial foreclosure into state action. . . . [T]he statute creates only the right to act; it does not require that such action be taken.") (citation and internal quotation marks omitted).

### 2. *Procedural Due Process*

Even if the Court were to find that a nonjudicial foreclosure conducted pursuant to Nevada's HOA lien statute constituted state action, it would nonetheless deny Chase's constitutional challenge because the statute does not violate the Due Process Clause.

#### a. Applicable Law

The Fourteenth Amendment to the U.S. Constitution states, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950). "The means

1  employed [to provide notice] must be such as one desirous of actually informing the absentee

2  might reasonably adopt to accomplish it." <u>Id.</u> at 315.

3       When a party asserts an unconstitutional deprivation of property under the Due Process

4  Clause, the court must first decide whether the party possessed a property interest and, if so,

5  whether it is of the type protected by the Due Process Clause. <u>Portman v. Cnty. of Santa Clara</u>,

6  995 F.2d 898, 904 (9th Cir. 1993). A mortgagee "clearly has a legally protected property interest."

7  <u>Mennonite Bd. of Missions v. Adams</u>, 462 U.S. 791, 798 (1983). Where the mortgagee's interest

8  is publicly recorded and the mortgagee is reasonably identifiable, due process requires that the

9  mortgagee be notified of a proceeding that may affect his or her interest "by notice mailed to the

10  mortgagee's last known available address, or by personal service." <u>Id.</u> Notice by publication and

11  notice to the property owner are not enough, as these methods "cannot be expected to lead to actual

12  notice to the mortgagee." <u>Id.</u> at 799. "Personal service or mailed notice is required even though

13  sophisticated creditors have means at their disposal" to find out whether assessments have been

14  paid or a sale is pending against the property in which they claim an interest. <u>Id.</u>

15       Under the "well-established principle" of constitutional avoidance, "statutes will be

16  interpreted to avoid constitutional difficulties." <u>Fair Hous. Council v. Roommate.com, LLC</u>, 666

17  F.3d 1216, 1222 (9th Cir. 2012) (quoting <u>Frisby v. Schultz</u>, 487 U.S. 474, 483 (1988)). "[I]f an

18  otherwise acceptable construction of a statute would raise serious constitutional problems, and

19  where an alternative interpretation of the statute is fairly possible, [the court is] obligated to

20  construe the statute to avoid such problems." <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 300 (2001) (internal

21  quotation marks omitted). The canon of constitutional avoidance "rest[s] on the reasonable

22  presumption that [the legislature] did not intend the alternative which raises serious constitutional

23  doubts." <u>Clark v. Martinez</u>, 543 U.S. 371, 381 (2005). This principle "does not, however, license

24  a court to usurp the policy-making and legislative functions of duly-elected representatives."

25  <u>Rodriguez v. Robbins</u>, 715 F.3d 1127, 1133-34 (9th Cir. 2013) (quoting <u>Heckler v. Mathews</u>, 465

26  U.S. 728, 741 (1984)). Therefore, if the alternative construction of the statute is "plainly contrary

27  to the intent" of the legislature, the doctrine does not apply. <u>Fair Hous. Council</u>, 666 F.3d at 1222.

28                      b.  <u>N.R.S. 116.3116 Does Not Violate the Due Process Clause</u>

1    The Court concludes that N.R.S. 116.3116 comports with the requirements of the Due

2    Process Clause. In its brief, Chase attempts to characterize the notice provisions of N.R.S.

3    116.3116 as "opt-in" provisions that do not mandate notice to an interested party unless that party

4    affirmatively requests it. The Court disagrees and finds that the notice provisions of N.R.S.

5    116.3116 mandate notice to holders of deeds of trust and other recorded interests as due process

6    requires. There are two reasons for this conclusion.

7    First, as recognized by the Nevada Supreme Court in <u>SFR</u>, the Nevada HOA lien statute

8    expressly incorporates the provisions of N.R.S. 107.090, which "govern[ ] notice to junior

9    lienholders and others in deed-of-trust foreclosure sales." 334 P.3d at 408. Under these provisions,

10    the trustee or other person authorized to record the notice of default and conduct the sale must send

11    by registered or certified mail, with return receipt requested and postage prepaid, a copy of the

12    notice of default and the notice of sale to "[e]ach person who has requested a copy of the notice"

13    *and* "[e]ach other person with an interest whose interest or claimed interest is subordinate to the

14    deed of trust." N.R.S. 107.090(3)(b), (4). Because "[t]he provisions of N.R.S. 107.090 apply to the

15    foreclosure of an association's lien as if a deed of trust were being foreclosed," N.R.S. 116.31168

16    (2014), the Court finds that the Nevada HOA lien statute requires the notice of default and election

17    to sell and the notice of sale to be sent to every person with an interest or claimed interest that is

18    subordinate to the HOA's superpriority lien—a class of persons that includes holders of deeds of

19    trust such as Chase, whose interests are subordinate to an HOA's lien to the extent of nine months

20    of unpaid assessments. See <u>SFR</u>, 334 P.3d at 411.

21    Second, insofar as the procedures set forth in the HOA lien statute might raise due process

22    concerns, the Court would apply the canon of constitutional avoidance to interpret the statute so

23    as to eliminate those concerns. Read in isolation (and without reference to the provisions of N.R.S.

24    107.090), the HOA lien statute could lead its readers to the conclusion that HOAs are not required

25    to give notice of impending HOA foreclosures to lenders absent an affirmative request. But the

26    statute is susceptible to an alternative (and equally reasonable) construction that avoids this

27    constitutional problem. Under this alternative construction, the holder of a recorded security

28    interest in a parcel of real property has "notified" and "requested notice" from an HOA by simply

publicly recording its interest, thereby triggering the HOA's duty under the statute to provide notice to the interest holder of its election to sell and the sale itself. This is consistent with the principle in Nevada law that by recording a deed of trust or other conveyance of real property, an interest holder has "impart[ed] notice to all persons of the contents thereof." N.R.S. 111.320. Therefore, even if it were to find that the statute could be construed in a way that offended due process, the Court would adopt an interpretation requiring HOAs to give notice of default and sale to all persons with a recorded interest in the property at issue. Under this construction of the statute, no further affirmative act by the recorded interest holder would be necessary beyond the recording of the instrument.

For these reasons, the Court rejects Chase's challenge to N.R.S. 116.3116 under the Due Process Clause.

### D.  Property Clause Challenge to N.R.S. 116.3116

Chase also argues that HUD holds an interest in the Deed of Trust through its contract of insurance and that extinguishment of the Deed of Trust would therefore violate the Property Clause of the U.S. Constitution. This argument has been raised—and rejected—by at least one other court in this District. See Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC, 106 F.Supp.3d 1174, 1179-82 (D. Nev. 2015). This Court agrees with the analysis and result in Freedom Mortgage and will draw upon that analysis in setting forth its similar reasoning and conclusions here. The Court finds that Chase does not have standing to bring a Property Clause claim on behalf of HUD. Even if Chase had standing, the Court would find that the HOA foreclosure sale in this case did not violate the Property Clause.

#### 1.  Applicable Law

Under the Property Clause of the Constitution of the United States, "Congress has the Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. Accordingly, title to the United States's property can only be divested by an Act of Congress. Beaver v. United States, 350 F.2d 4, 8 (9th Cir. 1965).

1    The term "property" under the Property Clause includes not only territory, but also "all

2    other personal and real property rightfully belonging to the United States." Ashwander v. Tenn.

3    Valley Water Auth., 297 U.S. 328, 331 (1936). This definition includes mortgage interests held by

4    federal instrumentalities. Rust v. Johnson, 597 F.2d 174, 177 (9th Cir. 1979). Neither the Supreme

5    Court nor the Ninth Circuit has held, however, that a federal insurance policy on a private loan

6    gives the federal government a property interest protected by the Property Clause.

7    Here, Chase seeks to invoke the Property Clause on the basis of a purported property

8    interest held by HUD, which is not a party to this case. For this court to have jurisdiction over a

9    case, "the party bringing the suit must establish standing." Elk Grove Unified Sch. Dist. v.

10   Newdow, 542 U.S. 1, 11 (2004), abrogated in part on other grounds in Lexmark Int'l, Inc. v. Static

11   Control Components, Inc., 134 S.Ct. 1377, 1387 (2014). The standing doctrine encompasses two

12   parts: "a constitutional component, rooted in the Constitution's case-or-controversy requirement,

13   and a prudential component, which embraces judicially self-imposed restraints on federal

14   jurisdiction. A litigant must satisfy both to seek redress in federal court." United States v.

15   Lazarenko, 476 F.3d 642, 649 (9th Cir. 2006) (citations omitted).

16   It is the prudential component of standing that is at issue here. Prudential standing

17   "encompasses the general prohibition on a litigant's raising another person's legal rights . . . ." Id.

18   at 649-50 (internal quotation marks omitted). "It is a well-established rule that a litigant may assert

19   only his own legal rights and interests and cannot rest a claim to relief on the legal rights or interests

20   of third parties." Coal. of Clergy, Lawyers, & Professors v. Bush, 310 F.3d 1153, 1163 (9th Cir.

21   2002). As this prohibition is prudential rather than constitutional, the Supreme Court has

22   recognized an exception where three criteria are met: "The litigant must have suffered an 'injury

23   in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in

24   dispute; the litigant must have a close relation to the third party; and there must exist some

25   hindrance to the third party's ability to protect his or her own interests." Id. (quoting Powers v.

26   Ohio, 499 U.S. 400, 410-111 (1991)).

27                    **2.   *Chase Lacks Standing to Assert a Property Clause Challenge***

28   The Court rejects Chase's Property Clause challenge for lack of standing. Chase is not the

proper party to bring a Property Clause challenge to the extinguishment of the Deed of Trust and cannot meet the requirements for third-party standing. Therefore, it may not assert a Property Clause claim.

Chase falls within the general prohibition on asserting a third party's rights encompassed by the doctrine of prudential standing. In its Property Clause challenge, Chase attempts to assert an interest (in the form of a policy insuring the Deed of Trust) belonging to HUD, not Chase. HUD is not a party to this action, and to the extent it possesses a protected interest in the Property, it has not attempted to assert it in this case. HUD is perfectly capable of protecting its own rights if it so chooses. Federal law authorizes the Secretary of HUD, "in carrying out the provisions of this subchapter" and other subchapters with respect to national housing, mortgages, and mortgage insurance, "to sue and be sued in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1702. Chase has produced no evidence of any assignment of HUD's rights to itself, nor has it pointed to any authority that would authorize such an assignment.

Moreover, Chase has not satisfied the limited exception to the bar on third-party standing. Chase has not produced evidence of any hindrance to HUD's ability to intervene in this suit or to bring a separate suit to protect its own interests. The Court therefore finds that Chase lacks prudential standing to challenge the HOA's foreclosure under the Property Clause. As stated by the Supreme Court in Singleton v. Wulff:

> Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them. The holders of the rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of *stare decisis*.

1    428 U.S. 106, 113-14 (1976) (citation omitted). Accordingly, the Court denies Chase's Property

2    Clause Challenge.

3

4                    ***3.   The Foreclosure Sale Did Not Violate the Property Clause***

5           Even if the Court were to find that Chase had established standing to assert a Property

6    Clause challenge on HUD's behalf, it would deny the challenge on the merits for two reasons.

7           First, Chase has not identified a property interest owned by the federal government that is

8    protected under the Property Clause. Chase argues that a federal agency's insurance of a mortgage

9    creates a federal property interest protected by the Property Clause. The Court's review of Ninth

10   Circuit precedent in this area indicates that property interests *have* been found where the federal

11   government actually owned the property or held the mortgage. See Rust v. Johnson, 597 F.2d 174,

12   177 (9th Cir. 1979) (Fannie Mae held an assignment of a purchase-money mortgage); United States

13   v. Stadium Apts., Inc., 425 F.2d 358, 359 (9th Cir. 1970) (HUD owned the property after

14   assignment by the bank, paid the mortgage-insurance claim, and foreclosed on the property);

15   United States v. View Crest Garden Apts., Inc., 268 F.2d 380, 381 (9th Cir. 1959) (mortgage was

16   assigned to the Federal Housing Administration). As discussed previously, however, Chase has

17   not cited—and the Court has not found—any case in which the Supreme Court or the Ninth Circuit

18   has held that a federal insurance policy on a private loan gives the federal government a property

19   interest protected by the Property Clause. The Court declines to extend the reach of the Property

20   Clause to prevent foreclosures on properties encumbered by HUD-insured mortgages.

21          Second, to the extent that HUD's interest in the Property is one that is protected by the

22   Property Clause, that interest was divested by operation of federal law as laid out by HUD;

23   therefore, the Property Clause was not violated. According to HUD's own regulation, its contract

24   of insurance "shall be terminated" if the property "is bid in and acquired at a foreclosure sale by a

25   party other than the mortgagee." 24 C.F.R. § 203.315(a)(2)(i), (b)(2). HUD's regulation providing

26   for the termination of its insurance contract demonstrates that it consented to being divested of its

27   interest in property under certain circumstances, one of which is when insured property is

28   purchased at a foreclosure sale by a third party. The HOA foreclosure sale in this case therefore

did not violate the Property Clause, as HUD's interest was divested through the mechanism it provided for in its own regulation.

### E. Federal Preemption

Next, Chase argues that the operation of N.R.S. 116.3116 to extinguish its Deed of Trust is preempted by HUD's mortgage insurance program. The Court finds that federal and state law do not conflict on this issue, and thus the Supremacy Clause does not bar enforcement of N.R.S. 116.3116. In reaching this conclusion, the Court once again agrees with the legal analysis and result reached by the court in Freedom Mortgage on this issue.[5] See 106 F.Supp.3d at 1183-86. The Court will nonetheless Chase's argument in full, drawing upon the analysis in Freedom Mortgage.

#### 1. Applicable Law

The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "Under our system of dual sovereignty, courts deciding whether a particular state law is preempted under the Supremacy Clause must strive to maintain the delicate balance between the States and the Federal Government, especially when Congress is regulating in an area traditionally occupied by the States." Gonzalez v. Arizona, 677 F.3d 383, 392 (9th Cir. 2012). "[C]ourts applying the Supremacy Clause are to begin with a presumption against preemption." Id. Courts also apply "a plain statement rule, holding that a federal statute preempts a state law only when it is the clear and manifest purpose of Congress to do so. Only where the state and federal laws cannot be reconciled do courts hold that Congress's enactments must prevail." Id. (citation and internal quotation marks omitted).

There are traditionally three types of preemption: express preemption, field preemption, and conflict preemption. Oneok, Inc. v. Learjet, Inc., 135 S.Ct. 1591, 1595 (2015). "Express preemption occurs when Congress enacts a statute that expressly commands that state law on the

---

[5] This Court does not find it necessary in this case to reach the second reason articulated in Freedom Mortgage for rejecting the preemption challenge—namely, that operation of Nevada's HOA lien statute is consistent with United States v. Kimbell Foods, Inc., 440 U.S. 715 (1979). See 106 F.Supp.3d at 1186-89.

1   particular subject is displaced." <u>Gadda v. Ashcroft</u>, 377 F.3d 934, 944 (9th Cir. 2004). Field

2   preemption occurs if Congress "intended to foreclose any state regulation in the area, irrespective

3   of whether state law is consistent or inconsistent with federal standards. In such situations,

4   Congress has forbidden the State to take action in the field that the federal statute pre-empts."

5   <u>Oneok</u>, 135 S.Ct. at 1595 (emphasis in original) (citation and internal quotation marks omitted).

6   Finally, "conflict pre-emption exists where compliance with both state and federal law is

7   impossible, or where the state law stands as an obstacle to the accomplishment and execution of

8   the full purposes and objectives of Congress." <u>Id.</u> (internal quotation marks omitted). Preemption

9   can occur through federal regulations in addition to statutes. <u>See, e.g.</u>, <u>Norfolk So. Ry. Co. v.</u>

10  <u>Shanklin</u>, 529 U.S. 344, 351-59 (finding that the Federal Railroad Safety Act preempts certain

11  state tort claims through regulations implemented under the Act).

12              ***2.   HUD's Mortgage Insurance Program Does Not Preempt N.R.S. 116.3116***

13          The Court finds that N.R.S. 116.3116 is not preempted by HUD's insurance program under

14  any of the preemption doctrines.

15          First, Chase has not identified, and the Court has not found, any authority expressly

16  preempting the operation of state law in the context of HOA foreclosures on HUD-insured

17  mortgages. Thus, express preemption does not apply.

18          Second, it is clear that field preemption does not apply either, as property foreclosure is not

19  an area where Congress has demonstrated its intent to "occupy the field" of regulation. On the

20  contrary, foreclosure of real property has traditionally been an area left to the states. <u>See</u> <u>BFP v.</u>

21  <u>Resolution Trust Corp.</u>, 511 U.S. 531, 544 (1994) ("It is beyond question that an essential state

22  interest is at issue here: We have said that 'the general welfare of society is involved in the security

23  of the titles to real estate' and the power to ensure that security 'inheres in the very nature of [state]

24  government'") (alteration in original) (quoting <u>Am. Land Co. v. Zeiss</u>, 219 U.S. 47, 60 (1911));

25  <u>see also</u> <u>Rank v. Nimmo</u>, 677 F.2d 692, 697 (9th Cir. 1982) ("mortgage foreclosure has

26  traditionally been a matter for state courts and state law") (citation and internal quotation marks

27  omitted); <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979) ("Property interests are created and

28  defined by state law.").

1         The only potential way in which N.R.S. 116.3116 could be preempted, therefore, is through

2    conflict preemption. Chase argues that enforcing N.R.S. 116.3116 to extinguish Chase's Deed of

3    Trust would conflict with the purposes of HUD's insurance program, through which it insures

4    mortgages originated by private lenders for the purpose of making housing available to all citizens.

5    Chase contends that this program allows title to be conveyed to HUD after foreclosure on the Deed

6    of Trust, thereby allowing HUD to replenish the funds used for the insurance program, and that

7    enforcement of the HOA's superpriority lien through N.R.S. 116.3116 would interfere with this

8    structure.

9         The purpose and structure of HUD's mortgage insurance program was set forth in detail in

10   Freedom Mortgage:

11        As HUD's website and various publications explain, the single-
     family mortgage-insurance program provides mortgage insurance to protect

12   lenders against the risk of default on mortgages to qualified buyers. The
     federal regulations governing the program are contained in the Code of

13   Federal Regulations (CFR), Title 24.

14        When a HUD-insured mortgage goes into default, the lender may

15   make a claim for the remaining principal amount owed under the loan.
     Typically, the lender must assign the mortgage to HUD and certify that the

16   mortgage is prior to all liens and encumbrances, or defects which may arise

17   except such liens or other matters as may have been approved by the
     Commissioner. Alternatively, the lender may foreclose, acquire title, and

18   make a claim for the deficiency. The insurance contract shall be terminated

19   if [t]he property is bid in and acquired at a foreclosure sale by a party other
     than the mortgagee—which is to say, any party except the lender. In short,

20   a lender has two primary ways to obtain benefits under the program: (1)

21   assign the first-position mortgage interest to HUD before foreclosure or (2)
     initiate foreclosure and make a claim for the deficiency.

22

23   106 F.Supp.3d at 1183-84 (footnotes, citations, and internal quotation marks omitted) (alteration

24   in original).

25        The Court concludes that conflict preemption does not apply in this case. Lenders are

26   perfectly capable of complying with both HUD's program and N.R.S. 116.3116; in fact, HUD's

27   regulations expressly *contemplate* situations in which a lender forfeits its security interest by

28   failing to protect it against senior interests. As described in Freedom Mortgage, when a HUD-

1  insured mortgage goes into default, a lender has two options: (1) assign the first-position mortgage

2  interest to HUD before foreclosure and make a claim for the remaining principal amount, or (2)

3  initiate foreclosure and make a claim for the deficiency. 106 F.Supp.3d at 1184; 24 C.F.R. §§

4  203.350, 203.351, 203.401. If it fails to protect its interest, however, the lender loses any claim to

5  benefits; under 24 C.F.R. § 203.315, HUD's contract of insurance is terminated where "[t]he

6  property is bid in and acquired at foreclosure by a party other than the mortgagee." Therefore, the

7  lender is in control of its compliance with both HUD's program and Nevada's foreclosure statutes.

8  HUD only has an interest in the property insofar as the lender conveys title or forecloses and

9  initiates a claim. HUD's property interest ceases once a third party buyer acquires the property at

10  a foreclosure sale, and HUD's decision (by virtue of 24 C.F.R. § 203.315) to terminate its contract

11  at that point demonstrates that such foreclosures do not serve as an obstacle to HUD's program.

12  On the contrary, the only obstacle to HUD's objectives appears to be the lender's own inaction.

13  There can thus be no conflict preemption because compliance with both state and federal law is

14  possible and Nevada's HOA lien statute does not serve as an obstacle to Congress's objectives in

15  enacting the HUD insurance program. For these reasons, Chase's Supremacy Clause challenge

16  fails.

17

18                          **F.  Wrongful Foreclosure and Quiet Title Claims**

19          Chase also argues that summary judgment should be granted in its favor on its wrongful

20  foreclosure and quiet title claims for a variety of reasons unrelated to its constitutional challenges.

21  Chase asserts that the foreclosure sale should be unwound or set aside because the foreclosure sale

22  was commercially unreasonable, that ATC and the HOA did not comply with the statutory notice

23  provisions before conducting the sale, that ATC and the HOA failed to give notice as required

24  under the CC&Rs, that ATC unlawfully failed to disclose the superpriority portion of the HOA

25  lien, and that ATC unlawfully included attorney's fees and costs of collection in the lien amount.

26          Nevada law provides that "[a]n action may be brought by any person against another who

27  claims an estate or interest in real property, adverse to the person bringing the action, for the

28  purpose of determining such adverse claim." N.R.S. 40.010. In a quiet title action, the plaintiff

1   bears the burden of proving good title in himself, and there is a presumption favoring the record

2   title holder. <u>Breliant v. Preferred Equities Corp.</u>, 918 P.2d 314, 318 (Nev. 1996) (citation omitted).

3         Relatedly, "[a] wrongful foreclosure claim challenges the authority behind the foreclosure,

4   not the foreclosure act itself." <u>McKnight Family, L.L.P. v. Adept Mgmt.</u>, 310 P.3d 555, 559 (Nev.

5   2013). To bring a successful wrongful foreclosure claim, Chase must "establish that at the time

6   the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of

7   performance existed on [Chase's] part which would have authorized the foreclosure or exercise of

8   the power of sale." <u>Collins v. Union Fed. Sav. & Loan Ass'n</u>, 662 P.2d 610, 623 (Nev. 1983).

9   Courts in Nevada possess the inherent power "to grant equitable relief from a defective foreclosure

10  sale when appropriate." <u>Shadow Wood HOA v. N.Y. Cmty. Bancorp.</u>, 366 P.3d 1105, 1110 (Nev.

11  2016). However, "demonstrating that an association sold a property at its foreclosure sale for an

12  inadequate price is not enough to set aside that sale; there must also be a showing of fraud,

13  unfairness, or oppression." <u>Id.</u> at 1112.

14        In light of recent case law from the Nevada Supreme Court, this Court finds that Chase has

15  not met its burden of demonstrating good title to the Property or the elements of any of its wrongful

16  foreclosure claims, nor has it established equitable grounds to set aside the foreclosure sale. The

17  Court therefore grants summary judgment in favor of Defendants on Chase's quiet title and

18  wrongful foreclosure claims. The Court considers, and rejects, each of Chase's arguments in

19  support of these claims in turn.

20                          *1.  Tender*

21        First, Chase argues that the HOA's superpriority lien was discharged by MetLife's tender

22  of payment to Hampton & Hampton on October 7, 2011. The Court rejects this contention because

23  the payment tendered by MetLife was in satisfaction of an entirely separate HOA lien.

24        In its brief, Chase appears to argue that MetLife's tender of payment forever discharged

25  the superpriority lien and that the HOA's subsequent enforcement of the lien was an attempt to

26  resuscitate that lien by successive enforcement action. Chase cites to a report from the Joint

27  Editorial Board for Uniform Real Property Acts (JEB), an arm of the Uniform Law Commission,

28

1   which found that the Uniform Common Interest Ownership Act of 1982 (UCIOA)[6] was not

2   intended to authorize successive lien enforcement actions to extend the superpriority lien beyond

3   the statutorily authorized period.

4        The Court does not disagree with the JEB's interpretation of the UCIOA. But that is not

5   what happened in this case. The evidence in this case demonstrates that MetLife's tender of

6   payment on October 7, 2011 discharged the 2011 lien recorded by Hampton & Hampton—a fact

7   acknowledged by the HOA when its agent recorded a Notice of Rescission on October 21, 2011.

8   In 2012, however, the HOA commenced enforcement proceedings on a separate lien based upon

9   the Reinhards' default on HOA assessments beginning in November 2011—*after* the rescission of

10  the Hampton & Hampton lien. The HOA's second lien, which was noticed in 2012 and foreclosed

11  upon by sale in 2014, was based upon unpaid assessments and late fees dating from November 1,

12  2011 onward. Chase has produced no evidence of an attempt to tender payment in satisfaction of

13  the second HOA lien.

14       Chase has not presented, and the Court has not found, any authority stating that an HOA is

15  precluded from bringing multiple enforcement actions to enforce entirely separate liens (with

16  superpriority portions) for unpaid assessments against the same parcel of property. Chase's

17  reliance on the JEB report for this proposition is unavailing. The JEB report, citing to an

18  unpublished Connecticut case, states that the UCIOA does not allow HOAs "to assert a first lien

19  priority for more than six months of unpaid common expense assessments in the context of the

20  same foreclosure proceeding by [the bank]." Rep. of Joint Editorial Bd. for Uniform Real Prop.

21  Acts at 14 (June 1, 2013) ("JEB Report") (citing Lake Ridge Condo. Ass'n, Inc. v. Vega, No. NNH-

22  cv-116021568S, 2012 WL 6634905 (Conn. Super. Ct. Nov. 30, 2012)).[7] But in the JEB Report

23  example and the Lake Ridge case, the association was attempting to enforce the superpriority

24  portion of its lien multiple times during the pendency of the same bank foreclosure action. See

25  JEB Report at 13; Lake Ridge, 2012 WL 6634905 at *1-2. Here, Chase had no foreclosure action

26

27       [6] Nevada's HOA lien statute is "a creature of" the UCIOA and, with certain important exceptions, closely tracks the UCIOA's provisions. SFR, 334 P.3d at 409-11.

28       [7] Available at http://www.uniformlaws.org/shared/docs/jeburpa/2013jun1_JEBURPA_UCIOA %20Lien%20Priority%20Report.pdf.

1    pending during either period of time when the HOA attempted to foreclose on its lien for

2    assessments.[8] Moreover, the policy rationale for preventing the association from repeatedly

3    asserting the superpriority portion of its lien while the same bank foreclosure action is pending—

4    namely, that allowing such successive liens would deter banks from ever paying off the original

5    lien so as not to create another superpriority lien—does not apply with the same force in a case

6    where, as here, the bank never attempted to foreclose.

7         The Court therefore declines to adopt Chase's position that the superpriority portion of an

8    HOA's lien for assessments is a one-shot offer that, once discharged, can never be asserted again.

9    Such a holding would be contrary to the purposes of Nevada's HOA lien statute, one of which is

10   to encourage the collection of needed HOA funds and avoid adverse impacts on other residents.

11   See SFR, 334 P.3d at 417. For these reasons, Chase's tender argument fails.

12              ### 2.  *Compliance with the Notice Provisions of N.R.S. Chapter 116 and the*

13                   *CC&Rs*

14         Next, Chase argues that the HOA both procedurally and substantively failed to comply

15   with the notice requirements of the HOA lien statute and the CC&Rs. The Court rejects both

16   aspects of this argument.

17         Chase's procedural argument is twofold. First, Chase argues that the HOA has not shown

18   that it complied with N.R.S. 116.31163, which at the time required that the Notice of Default and

19   Election to Sell be mailed by first-class mail and not simply by certified mail. The evidence

20   demonstrates and the Court finds, however, that on August 1, 2012, the HOA mailed a copy of the

21   Notice of Default and Election to Sell on August 1, 2012 by first-class mail to MetLife, Chase's

22   predecessor in interest, in accordance with N.R.S. 116.31163. See ECF No. 68 Ex. A-1. Second,

23   Chase contends that the HOA has not shown that it fulfilled Section 17.3(b) of the CC&Rs, which

24   requires that notice of any delinquency in assessments be sent to the holder of a first security

---

26         [8] This case is more comparable to the JEB Report's fifth example, in which the bank paid the

27   association an amount equal to the superpriority portion of its lien and the association subsequently
     commenced an action to enforce its lien for later-accrued unpaid assessments. JEB Report at 14. In that
     example, the JEB concluded that the first payment would not preclude the association from asserting the

28   superpriority portion of its lien for the subsequent unpaid assessments. Id. at 14-15. While the example
     differs in some respects from this case, the Court finds it to be instructive.

1    interest. While Defendants appear to concede that the Notice of Delinquent Assessment was not

2    sent to Chase, Chase has not cited to any authority which establishes that a foreclosure sale can be

3    invalidated by an HOA's failure to comply with such a requirement in its own CC&Rs. To the

4    contrary, this argument is foreclosed by N.R.S. 116.1104, which states that absent express statutory

5    language to the contrary, Chapter 116's provisions "may not be varied by agreement, and rights

6    conferred by it may not be waived." Chapter 116 does not expressly provide that a declaration can

7    set forth additional notice requirements that, unless satisfied, negate the status of the superpriority

8    portion of an HOA's lien. The HOA's apparent failure to comply with Section 17.3(b) therefore is

9    not a basis upon which Chase may prevail on its quiet title claim. See <u>SFR</u>, 334 P.3d at 418-19

10   (holding that the bank's argument that a mortgage savings clause in the CC&Rs subordinated the

11   HOA's superpriority lien was defeated by N.R.S. 116.1104, and stating that "[t]he mortgage

12   savings clause thus does not affect N.R.S. 116.3116(2)'s application in this case").

13          Substantively, Chase argues that the notices provided by the HOA regarding foreclosure

14   of its lien were insufficient because they did not contain a calculation of the superpriority lien

15   amount and because they impermissibly included collection costs and fees. The Court rejects

16   Chase's argument that the 2013 HOA lien statute required that the HOA specify the portions of

17   the lien that are accorded superpriority status. The 2013 HOA lien statute merely required that the

18   written notice "[d]escribe the deficiency in payment." N.R.S. 116.31162(1)(b)(1) (2013). It did

19   not require an HOA to break down its statement of the lien amount into superpriority and

20   subpriority categories. In 2015, the Nevada legislature amended N.R.S. 116.31162 to require that

21   the HOA separately state the amount of the superpriority portion of the lien. The amendment

22   suggests that this requirement did not exist in previous versions of the statute. See <u>In re Estate of</u>

23   <u>Thomas</u>, 998 P.2d 560, 562 (Nev. 2000) (noting that an amendment to a statute is persuasive

24   evidence of the legislature's intent in enacting the first statute). And importantly, Chase does not

25   argue or present any evidence that the HOA prevented it from determining the exact superpriority

26   amount. In fact, Chase's Rule 30(b)(6) representative confirmed that Chase did not attempt to pay

27   any amount to the HOA or its agent and did not attempt to otherwise communicate with the HOA

28   or its agent. Dep. of Patrick Pittman 41:2-8, 42:14-20, SFR's Suppl. Mot. Dismiss Ex. A-4, ECF

1    No. 69. Therefore, the HOA's notice to Chase was not deficient on this basis. See SFR, 334 P.3d

2    at 418 (rejecting a similar due process argument because "[t]he notices went to the homeowner

3    and other junior lienholders, not just U.S. Bank, so it was appropriate to state the total amount of

4    the lien. . . . From what little the record contains, nothing appears to have stopped U.S. Bank from

5    determining the precise superpriority amount in advance of the sale or paying the entire amount

6    and requesting a refund of the balance.").

7         The Court agrees with Chase that the HOA's notices included collection costs and

8    attorney's fees that are not part of the HOA's lien for assessments. In Horizons at Seven Hills v.

9    Ikon Holdings, the Nevada Supreme Court found that the superpriority portion of the HOA's lien

10   under N.R.S. 116.3116 does not include collection costs and fees. 373 P.3d at 72. The Court finds

11   that the Nevada Supreme Court's reasoning in Ikon Holdings demonstrates that collection costs

12   are not included in the subpriority piece of the HOA's lien either. Nevertheless, Chase has not

13   demonstrated that the HOA's inclusion of these additional costs and fees is a basis for Chase to

14   prevail on its quiet title or wrongful foreclosure claims. There are two reasons for this conclusion.

15        First, Chase does not assert that the foreclosure sale was improper due to the inclusion of

16   these additional fees or that the superpriority portion of the HOA's lien would have been paid if

17   the lien amount did not include these fees. The purpose of a quiet title action is to resolve adverse

18   claims to real property asserted by the named parties. N.R.S. 40.010. Here, Chase appears to be

19   arguing that, had the HOA's lien not included collection costs and attorney's fees, the Reinhards

20   may have been able to pay the assessments. But the Reinhards are no longer named parties in this

21   suit, and Chase has produced no evidence that either the Reinhards or Chase itself would have paid

22   the HOA lien if it hadn't included collection costs and fees. This is reinforced by the fact that

23   Chase did not take any action to contest the validity of the HOA's lien, attempt to pay the lien, or

24   stop the foreclosure sale, despite receiving the notice of default and election to sell and the notice

25   of sale. Nor has Chase shown that the HOA intentionally added these costs and fees in an effort to

26   increase the lien amount and thereby deter the Reinhards, Chase, or any other interest holder from

27   attempting to satisfy it. Under these circumstances, Chase has not shown that it was harmed by the

28   inclusion of additional costs and fees in the HOA lien, and thus no genuine issue of material fact

1  exists as to whether including collection costs and attorney's fees invalidated the foreclosure

2  sale—it did not.

3       Second, the Court finds that the HOA, and its agent ATC, substantially complied with the

4  HOA lien statutes. "Generally, in determining whether strict or substantial compliance is required,

5  courts examine the statute's provisions, as well as policy and equity considerations." Leven v.

6  Frey, 168 P.3d 712, 717 (Nev. 2007). "In so doing, [courts] examine whether the purpose of the

7  statute or rule can be adequately served in a manner other than by technical compliance with the

8  statutory or rule language." Leyva v. Nat'l Default Servicing Corp., 255 P.3d 1275, 1278 (Nev.

9  2011). "Substantial compliance may be sufficient to avoid harsh, unfair or absurd consequences.

10  Under certain procedural statutes and rules, however, failure to strictly comply with time

11  requirements can be fatal to a case." Leven, 168 P.3d at 717 (internal quotation marks omitted). In

12  general, "time and manner" requirements are strictly construed, while substantial compliance may

13  be sufficient for "form and content" requirements. Leven, 168 P.3d at 718.

14       The Court finds that substantial compliance was required for identifying the proper amount

15  of the lien subject to foreclosure by the HOA under the 2013 version of N.R.S. 116.3116. N.R.S.

16  Chapter 116 does not contain any provisions invalidating a sale based on an improper or incorrect

17  lien amount, and the Court construes N.R.S. 116.3116(1), which defines the permissible elements

18  that comprise an HOA lien, as a "form and content" requirement rather than a "time and manner"

19  requirement. Substantial compliance thus may be permissible under Nevada law, and the Court

20  finds that requiring only substantial compliance in this case comports with the policy

21  considerations underlying the HOA lien statute. As discussed by the Nevada Supreme Court in

22  SFR, the statute provides an expedient process by which HOAs can recover unpaid assessments

23  so that those costs are not borne by other homeowners. Requiring strict compliance would defeat

24  the goal of providing this expedient process. Requiring only substantial compliance is therefore

25  appropriate in this case.

26       The Court now looks to whether the HOA and its agent actually did substantially comply

27  with N.R.S. 116.3116 in this case. The evidence shows that they did. The HOA and its agent issued

28  the statutorily required notices and included unpaid assessments and late charges in the lien, as

permitted by the statute. In addition, the notice of default and election to sell indicates that while the "amount due" by the homeowner was $2,116.95 as of July 24, 2012, the homeowner could contact ATC to provide a written itemization of the amount. Therefore, the Court finds that the HOA and ATC substantially complied with the HOA lien statute. For these reasons, the Court rejects Chase's notice-related arguments.

As a final matter, while it need not reach the issue in this case, the Court finds it likely that Chase waived its substantive arguments as to the inclusion of additional costs and fees and failure to differentiate the superpriority and subpriority amounts of the lien. In Nevada, "[a] waiver is the intentional relinquishment of a known right. A waiver may be implied from conduct which evidences an intention to waive a right, or by conduct which is inconsistent with any other intention than to waive the right." Mill-Spex, Inc. v. Pyramid Precast Corp., 710 P.2d 1387, 1388 (Nev. 1985). While the existence of a waiver is generally a question for the trier of fact, id., the Court has strong doubts as to whether Chase's failure to object to the content of the HOA's notice at the time the notices were sent was evidence of anything other than an intention to waive its right to challenge the foreclosure. Moreover, to hold otherwise would incentivize mortgagees to remain silent with respect to any objections they may have regarding the content of HOA foreclosure sale notices until after the sales occur and then seek to unwind them. As discussed above, this result would pose significant hindrances to the expedient process for HOA foreclosures established under Nevada law.

### 3. Retroactivity of SFR

Chase also advances the argument that the Nevada Supreme Court's decision in SFR is not retroactive, and that the HOA's foreclosure sale therefore did not extinguish Chase's first deed of trust. The Court rejects this argument.

"When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." Am. Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 177 (1990). In Nevada, "[a] judicial interpretation of a statute may be retroactively applied if it is both authoritative and foreseeable." Hernandez v. State, 50 P.3d 1100, 1112 (Nev. 2002) (internal quotation marks omitted).

The Nevada Supreme Court has not decided whether its interpretation of N.R.S. 116.3116 is retroactive. However, the Court finds it extremely likely that the Nevada Supreme Court would answer this question in the affirmative. The Nevada Supreme Court's decision in <u>SFR</u> was both authoritative and foreseeable. The decision clearly resolved the issue of whether N.R.S. 116.3116 authorizes a true superpriority lien, making it authoritative. The decision was also foreseeable. In its ruling, the Nevada Supreme Court relied on the plain language of the statute and the official comments to the UCIOA, upon which N.R.S. 116.3116 was based. While lower courts were divided on the proper interpretation of the statute, the Nevada Supreme Court ultimately interpreted it to give effect to its plain language, a result that was clearly foreseeable. The Court therefore denies Chase's argument that <u>SFR</u> should not apply retroactively.[9]

### 4.  *Mortgage Protection Clause*

Chase also argues that the CC&Rs specifically provide for the preservation of its deed of trust even after the HOA foreclosure sale. This argument has previously been rejected in <u>SFR</u> and fails again here.

The mortgage savings clause contained in the CC&Rs states that the HOA has a lien for unpaid HOA assessments and that "[e]xcept to the extent permitted under [N.R.S. 116.3116(2)], a lien under this Section is prior to all other liens and encumbrances except . . . (2) a first Security Interest on the Unit recorded before the date on which the assessment sought to be enforced became delinquent." Decl. of Covenants, Conditions & Restrictions for The Preserves at Elkhorn Springs § 18.3(b), Chase's Countermotion Summ. J. Ex. 1, ECF No. 38 ("CC&Rs"). The subsection goes on to state that "[a] lien under this Section is also prior to all Security Interests described in

---

[9] The Court also notes that Chase relies heavily on the U.S. Supreme Court's decision in <u>Chevron Oil Co. v. Huson</u>, 404 U.S. 97 (1971), in which the Court set out factors to be considered in deciding whether to apply judicial decisions retroactively. The Nevada Supreme Court considered these factors in <u>Breithaupt v. USAA Prop. & Cas. Ins. Co.</u>, 867 P.2d 402, 405 (Nev. 1994), suggesting that <u>Chevron Oil</u> may be the standard in Nevada. However, the <u>Breithaupt</u> Court only considered these factors "[i]n determining whether a *new rule of law* should be limited to prospective application." <u>Id.</u> (emphasis added). A rule is "new" when it "overrules precedent, disapproves a practice sanctioned by prior cases, or overturns a long-standing practice uniformly approved by lower courts." <u>Bejarano v. State</u>, 146 P.3d 265, 271 (Nev. 2006). <u>SFR</u> did not announce a new rule of law. It did not overrule prior precedent or disapprove any procedure or practice approved by prior Nevada Supreme Court case law. And, as discussed above, it did not overturn a long-standing and uniformly accepted practice because the lower courts were divided on the issue. The <u>Chevron Oil</u> analysis therefore does not apply here.

1    subdivision (2) of this subsection to the extent that the Common Expense assessments are based
2    on the periodic budget adopted by the Association . . . and would have become due in the absence
3    of acceleration, during the six months immediately preceding institution of an action to enforce
4    the Association's lien." Id. The mortgage savings clause does not save Chase's claim for two
5    reasons.

6          First, by its own terms, the clause does not apply where an HOA seeks to enforce the
7    superpriority portion of its lien under N.R.S. 116.3116(2). The savings clause includes the phrase
8    "except to the extent permitted under the Act (N.R.S. 116.3116(2))," which demonstrates that the
9    HOA did not intend to enact any savings provisions that would conflict with the statutory
10   superpriority lien. This conclusion is confirmed by the remainder of Section 18.3(b), which closely
11   tracks the language of N.R.S. 116.3116(2).

12         Second, the Nevada Supreme Court's decision in SFR is directly on point and states that a
13   mortgage savings clause does not prevent the extinguishment of a first security interest. In SFR,
14   the Nevada Supreme Court held that "N.R.S. 116.1104 defeats this argument. It states that Chapter
15   116's provisions may not be varied by agreement, and rights conferred by it may not be
16   waived . . . [e]xcept as expressly provided in Chapter 116. . . . Nothing in [N.R.S.] 116.3116
17   expressly provides for a waiver of the HOA's right to a priority position for the HOA's super
18   priority lien. The mortgage savings clause thus does not affect NRS 116.3116(2)'s application in
19   this case." SFR, 334 P.3d at 419 (citation and internal quotation marks omitted) (alterations in
20   original).[10] Moreover, the evidence shows that the CC&Rs were recorded in 1997, well after
21   Nevada adopted N.R.S. Chapter 116 in 1991. Thus, there is no concern about the statute disrupting
22   vested contractual rights in this case.

### 5.   Equitable Grounds for Setting Aside Foreclosure Sale

24         Finally, the Court concludes that Chase has not established any other equitable grounds for
25   setting aside the foreclosure sale. While Chase focuses on arguing that the sale was commercially

---

27   [10] Further, in Ikon Holdings, the Nevada Supreme Court ruled that a similar mortgage savings
     clause restricting the superpriority lien to six months of assessments conflicted with N.R.S. 116.3116(2)
     and was thus negated pursuant to N.R.S. 116.1206(1). 373 P.3d at 73. Therefore, even if Chase had raised
28   the argument that the superpriority lien was limited to six months of assessments, Ikon Holdings would
     have foreclosed such a conclusion.

1  reasonable, this standard does not apply to HOA foreclosure sales under Nevada law. Instead,

2  courts must look to whether the challenger has shown a grossly inadequate price plus fraud,

3  unfairness, or oppression. <u>Shadow Wood</u>, 366 P.3d at 1110. Chase has presented no evidence to

4  satisfy this standard.

5

6  a.   <u>Commercial Reasonableness</u>

7  In its third cause of action, Chase asserts a wrongful foreclosure claim against the HOA

8  and ATC on the ground that the foreclosure sale was commercially unreasonable. N.R.S. Chapter

9  116 does not contain any provisions requiring that an HOA foreclosure sale be commercially

10  reasonable, nor does it provide for parties to be able to set aside foreclosure sales as being

11  commercially unreasonable.

12  Chapter 116 *does* require that "[e]very contract or duty governed by this chapter imposes

13  an obligation of good faith in its performance or enforcement." N.R.S. 116.1113. "Good faith" is

14  defined in the Nevada Revised Statutes as meaning "honesty in fact and the observance of

15  reasonable commercial standards of fair dealing." N.R.S. 104.1201(t). This definition only applies,

16  however, to the extent that an action is governed by another article of the Uniform Commercial

17  Code as adopted in Nevada. N.R.S. 104.1102. HOA foreclosure sales are not governed by the

18  Uniform Commercial Code as adopted in Nevada. This is confirmed by N.R.S. 104.9109(k), which

19  states that Article 9 of the UCC (governing secured transactions) does not apply to "[t]he creation

20  or transfer of an interest in or lien on real property." Therefore, the Court does not find that

21  foreclosure sales under N.R.S. 116 are governed by the commercial reasonableness standard as

22  that term is defined elsewhere in the Nevada Revised Statutes. <u>See, e.g.</u>, N.R.S. 104.9627 (defining

23  commercial reasonableness in the context of secured transactions); <u>Levers v. Rio King Land &</u>

24  <u>Inv. Co.</u>, 560 P.2d 917, 919-20 (Nev. 1977) (in the context of a nonjudicial sale of ranch supplies

25  upon default, "[i]n addition to giving reasonable notice, a secured party must, after default, proceed

26  in a commercially reasonable manner to dispose of collateral.") (citations omitted).

27  b.   <u>Grossly Inadequate Price "Plus"</u>

28

The fact that the commercial reasonableness standard does not expressly apply to HOA foreclosure sales in Nevada does not mean that a challenger can never assert a claim based on aspects of the sale. As the Nevada Supreme Court reaffirmed in <u>Shadow Wood</u>, "courts retain the power to grant equitable relief from a defective foreclosure sale when appropriate despite N.R.S. 116.31166," which states that the recitals in a foreclosure deed regarding the giving of notice and elapsing of the required number of days are conclusive. 366 P.3d at 1110-11. In order to establish that it is entitled to the equitable relief of an order setting aside a foreclosure sale, a party must make "a showing of grossly inadequate price *plus* fraud, unfairness, or oppression." <u>Id.</u> at 1110 (emphasis added). Restating longstanding Nevada law, the Court made clear that a showing of inadequate price "is not enough to set aside [an HOA foreclosure] sale; there must also be a showing of fraud, unfairness, or oppression." <u>Id.</u> at 1112 (citing <u>Long v. Towne</u>, 639 P.2d 528, 530 (Nev. 1982)).

In determining whether a sale price is grossly inadequate as a matter of law, the Nevada Supreme Court in <u>Shadow Wood</u> cited to the Restatement (Third) of Property: Mortgages for the proposition that, while gross inadequacy cannot be precisely defined, "a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value and, absent other foreclosure defects, is usually not warranted in invalidating a sale that yields in excess of that amount." <u>Id.</u> at 1112-13 (quoting Restatement (Second) of Prop.: Mortgages § 8.3 cmt. b (1997)). The Restatement defines fair market value as "not the fair 'forced sale' value of the real estate, but the price which would result from negotiation and mutual agreement, after ample time to find a purchaser, between a vendor who is willing, but not compelled to sell, and a purchaser who is willing to buy, but not compelled to take a particular piece of real estate." Rest. (Third) of Prop.: Mortgages § 8.3 cmt. b (1997). The Restatement further recognizes that "[g]ross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value . . . . While the trial court's judgment in matters of price adequacy is entitled to considerable deference, in extreme cases a price may be so low (typically well under 20% of fair market value) that it would be an abuse of discretion for the court to refuse to invalidate it." <u>Id.</u>

1    Here, the Court finds that Chase has not demonstrated equitable grounds to set aside the

2    foreclosure sale for two reasons. First, Chase has not shown that the sale price of the Property was

3    grossly inadequate as a matter of law. SFR paid $69,000 for the Property at the foreclosure sale.

4    In its supplemental brief, Chase produced an appraisal report of the Property stating that at the

5    time of the foreclosure sale, the Property was worth $414,000. The report is dated May 4, 2015,

6    and was therefore available to Chase at the time it filed its Second Motion for Summary Judgment;

7    however, Chase did not attach the report to its motion. The Court thus declines to consider it. See

8    School Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) ("The overwhelming

9    weight of authority is that the failure to file documents in an original motion or opposition does

10   not turn the late filed documents into newly discovered evidence."); Trentacosta v. Frontier Pac.

11   Aircraft Indus., Inc., 813 F.2d 1553, 1557 & n.4 (9th Cir. 1987) (district court did not abuse its

12   discretion in refusing to consider affidavits opposing summary judgment filed late).

13   Even if the Court were to consider this report and adopt the $414,000 figure as one

14   appraiser's estimate of the fair market value of the Property, it would not change the Court's

15   conclusion. Although SFR's purchase price is less than 20 percent of $414,000, the circumstances

16   in this case show that SFR's purchase price was not grossly inadequate. The sale was conducted

17   by public auction and SFR's winning bid ($69,000) far exceeded the amount due on the Notice of

18   Sale ($4,632.86). Moreover, the foreclosure sale was conducted on August 5, 2014, before the

19   Nevada Supreme Court issued its decision in SFR. Prior to that decision, federal and state courts

20   in Nevada were divided over whether N.R.S. 116.3116 created a true superpriority lien or whether

21   it merely created a "payment priority" lien that did not extinguish junior interests. See SFR, 334

22   P.3d at 412. This means that a purchaser at a pre-SFR HOA foreclosure sale was taking a risk that

23   the Nevada Supreme Court would rule that its purchase was still subject to the first deed of trust.

24   The appraisal upon which Chase relies does not adequately consider the risk associated with

25   purchasing a property subject to this likely litigation. Indeed, this litigation itself is an indication

26   of the risk and expense associated with the Property—a risk which appears to have been included

27   in the purchase price of the Property at the HOA foreclosure sale. The Court does not find that an

28   ordinary appraisal, such as the appraisal in this case, accurately reflects the price that a buyer would

be willing to pay at an HOA foreclosure sale in August 2014 for a piece of property encumbered by a first deed of trust.

Second, even if the price were grossly inadequate, Chase has produced no evidence of fraud, unfairness, or oppression, as required by Nevada law. See <u>Shadow Wood</u>, 366 P.3d at 1112. In <u>Shadow Wood</u>, for example, the Nevada Supreme Court noted that there was some evidence that the HOA provided varying lien amounts to the bank throughout the foreclosure process, "conduct that, if it rose to the level of misrepresentations and nondisclosures that indeed prevented [the bank's] ability to cure the default, might support setting aside the sale." 366 P.3d at 1114. There is no such evidence in this case. Despite being provided an opportunity to file a supplemental brief addressing the issue, Chase has produced no evidence that it attempted to contact the HOA or its agent during the foreclosure process at all, much less that the HOA misrepresented or failed to disclose the proper lien amounts or otherwise interfered with Chase's ability to cure the default. Therefore, Chase has not established the required equitable grounds for setting aside the foreclosure sale.

While Chase has raised a host of arguments in support of its quiet title and wrongful foreclosure claims, each one fails for the reasons discussed above. The Court therefore grants summary judgment in favor of Defendants on Chase's quiet title and wrongful foreclosure claims.

### G. Injunctive Relief

Chase's Second Cause of Action seeks a preliminary and permanent injunction. These forms of equitable relief are properly invoked pursuant to a quiet title action. <u>Shadow Wood</u>, 366 P.3d at 1110-11. However, because the Court has granted summary judgment in Defendants' favor on Chase's quiet title claim, this claim for equitable relief must fail as well. Summary judgment is granted in favor of SFR on Chase's claim for preliminary and permanent injunctive relief.

### H. Negligence and Negligence *Per Se*

In its claims for negligence and negligence *per se*, Chase alleges that the HOA and ATC had a duty to conduct the foreclosure sale properly and in a manner that would allow Chase to

1    protect its interest and cure the superpriority lien. Chase alleges that the HOA and ATC breached

2    this duty by failing to disclose that they were foreclosing on a superpriority lien, failing to disclose

3    the amount of the superpriority lien, and failing to provide Chase notice of its opportunity to cure.

4           The Court need not rule on the issue of whether N.R.S. 116.3116 creates a separate cause

5    of action for negligence. Based on the discussion above, ATC and the HOA were not required

6    under the statute to disclose the existence or amount of the superpriority lien, nor were they

7    required to notify Chase of its opportunity to cure.[11] In addition, Chase has presented no Nevada

8    authority creating a separate common law duty to perform these actions. Therefore, the Court

9    grants summary judgment in the HOA's and ATC's favor on Chase's claims for negligence and

10   negligence *per se*.

11

12                    **I.  Breach of Contract**

13          In its eighth cause of action, Chase asserts that ATC and the HOA's conduct before and

14   during the foreclosure sale breached the CC&Rs. In Nevada, breach of contract is "a material

15   failure of performance of a duty arising under or imposed by agreement."  Bernard v. Rockhill

16   Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987). A breach of contract claim under Nevada law requires

17   (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of

18   the breach. Richardson v. Jones, 1 Nev. 405, 409 (1865); Rivera v. Peri & Sons Farms, Inc., 735

19   F.3d 892, 899 (9th Cir. 2013) (citing Richardson).

20          For the reasons discussed above, the Court finds that the HOA and ATC did not materially

21   breach the provisions of the CC&Rs identified by Chase. Moreover, to the extent the HOA's

22   apparent failure to provide the notice of delinquent assessment constituted a material breach of

23   Section 17.3(b) of the CC&Rs, Chase has produced no evidence that it was damaged by the breach.

24   As discussed above, the record indicates that the notice of default and election to sell was mailed

25   to MetLife on August 1, 2012, that MetLife assigned its beneficial interest in the Property to Chase

26

27          [11] Even if ATC or the HOA *were* required to notify Chase of its opportunity to cure the default,
     they did so in this case by mailing the notice of default and election to sell and the notice of sale to Chase

28   or its predecessor-in-interest, MetLife. Both notices informed Chase that the property was subject to
     foreclosure by sale and provided instructions on how to stop the HOA's foreclosure.

on October 17, 2013, and that the notice of sale was mailed to Chase on July 8, 2014. Despite these notices, Chase never contacted the HOA or its agent to inquire about or attempt to stop the sale, never attempted to satisfy the HOA's lien, and never took any other steps to protect its interest. There is no evidence to suggest that a failure to provide the notice of delinquent assessment, which was recorded approximately one month before the notice of default and election to sell, caused damage to Chase, which is an essential element of its breach of contract claim. The Court grants summary judgment in the HOA's and ATC's favor on this claim.

### J.  Misrepresentation

In its misrepresentation claim, Chase alleges that the HOA made false representations in the mortgage protection clause contained in the CC&Rs. As discussed above, however, the mortgage protection clause specifically provides that the protection does not apply to enforcement of N.R.S. 116.3116(2), the HOA superpriority lien statute. Therefore, Chase cannot prove an essential element of its misrepresentation claim: that the HOA made a false representation. See Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1386 (Nev. 1998) (the elements of a fraudulent misrepresentation claim are "(1) A false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation."). The Court grants summary judgment in favor of the HOA on Chase's misrepresentation claim.

### K.  Unjust Enrichment

Chase also asserts a claim for unjust enrichment against SFR, alleging that SFR has benefited from Chase's payment of taxes, insurance, or HOA assessments since the date of the foreclosure sale. In its Second Motion for Summary Judgment, Chase also argues that SFR has been unjustly enriched because it has collected rent on the Property and has delayed Chase's ability to foreclose on its deed of trust.

Unjust enrichment is a theory of restitution in which a plaintiff confers a benefit and seeks payment of "as much as he ... deserve[s]" for that benefit. <u>Certified Fire Prot. Inc. v. Precision Constr.</u>, 283 P.3d 250, 257 (Nev.2012) (alteration in original). "Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment for the value thereof." <u>Id.</u>

Here, the Court has found that ATC and the HOA properly foreclosed on the Property by selling it to SFR at the foreclosure sale. Chase has not demonstrated that this sale was wrongful or inequitable, and cannot prove good title in itself. Therefore, with respect to the allegations raised in its Second Motion for Summary Judgment that SFR benefited by collecting rent and preventing Chase from foreclosing, Chase cannot satisfy the third element of its unjust enrichment claim (demonstrating that it would be inequitable for SFR to retain the benefit it received).

The remaining allegations pertaining to Chase's unjust enrichment claim are that Chase paid taxes, insurance, or HOA assessments after SFR purchased the Property at the foreclosure sale. This portion of Chase's claim fails for two reasons. First, Chase has produced no evidence of such payments; thus, it cannot establish the first element of its unjust enrichment claim (the plaintiff's conferral of a benefit on the defendant).

Second, to the extent Chase did make payments to SFR, the Court finds that Chase's unjust enrichment claim is barred by the voluntary payment doctrine. "The voluntary payment doctrine is an affirmative defense that provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment." <u>Nevada Ass'n Servs., Inc. v. Eighth Jud. Dist. Court</u>, 338 P.3d 1250, 1253 (Nev. 2014) (internal quotation marks omitted). The defendant bears the burden of proving that the doctrine is applicable in a particular case. <u>Id.</u> at 1254. "Once a defendant shows that a voluntary payment was made, the burden shifts to the plaintiff to demonstrate that an exception to the voluntary payment doctrine applies." <u>Id.</u> The voluntary payment doctrine promotes stability of transactions. <u>Id.</u> at 1256.

Here, SFR has met its burden of showing that, even if Chase made tax payments, these payments were voluntary. The parties both agree that if Chase made any payments towards the

1   Property, it did so after the HOA foreclosure sale. Chase does not argue that it made the payments

2   under protest. Nor does Chase argue that it lacked knowledge of the facts; indeed, as discussed

3   above, Chase or its predecessor received the HOA's Notice of Default and Election to Sell and the

4   Notice of Sale, and the Trustee's Deed Upon Sale was recorded less than ten days after the

5   foreclosure sale. This is sufficient to satisfy SFR's initial burden. Nevada Ass'n Servs., 338 P.3d

6   at 1254 (payor's admission that it made the payment, combined with the fact that the payor did not

7   argue that it paid under protest or lacked knowledge of the facts, was sufficient for HOA's agent

8   to meet its initial burden under the voluntary payment doctrine). The burden thus shifts to Chase

9   to prove an exception to the voluntary payment doctrine. It has not done so.

10       Chase argues that the defense of property exception should apply in this case to save its

11   unjust enrichment claim. "It is well settled that one is not a volunteer or stranger when he pays to

12   save his interest in his property." Cobb v. Osman, 433 P.2d 259, 263 (Nev. 1967). The defense of

13   property exception does not apply here. First, as discussed above, Chase does not have title to the

14   Property; thus, any payments it made did not serve to save its interest in that property. Second,

15   even if Chase had retained some interest in the Property, it has not established that its interest was

16   in danger of being extinguished if the tax payments were not made. In Nevada Association

17   Services, the Nevada Supreme Court found the defense of property exception inapplicable and

18   distinguished the case from Cobb, the foundational case for the exception in Nevada. 338 P.3d at

19   1256. In part, the Court in Nevada Association Services held as follows:

20       Cobb involved a case where the payor risked losing his property
         interest in foreclosure if he did not pay another's loan. Here, Elsinore did
21       not demonstrate any such risk existed. Although Elsinore demonstrated that
         Peccole Ranch placed a lien on Elsinore's property, there is no evidence
22       showing that foreclosure proceedings were imminent. While a lien creates
         a security interest in property, a lien right alone does not give the lienholder
23       right and title to property. Instead, title, which constitutes the legal right to
         control and dispose of property, remains with the property owner until the
24       lien is enforced through foreclosure proceedings. Thus, a lien that is not
         subject to ongoing or imminent foreclosure proceedings does not create a
25       risk of the loss of property. Furthermore, where a reasonable legal remedy
         is available to the payor, a payment made to relieve the lien is voluntary.
26
27       Therefore, Elsinore's payment to release Peccole Ranch's lien does

28

1                not meet Cobb's defense of property exception to the voluntary payment

2                doctrine.

3     <u>Id.</u> at 1256-57 (citations and internal quotation marks omitted). The reasoning of <u>Nevada</u>

4     <u>Association Services</u> applies here. Chase has not demonstrated that foreclosure proceedings were

5     imminent if the property tax was not paid on the Property, and therefore has not shown that it

6     risked losing its interest (even if it had one, which it did not) if it did not make the tax payments.

7            For these reasons, the Court grants summary judgment in favor of SFR on Chase's unjust

8     enrichment claim.

9

10            **L.  Waste**

11          Chase's final cause of action is for waste against SFR. Nevada law does not clearly define

12    the contours of a cause of action for waste. At a minimum, however, it is clear that in order to state

13    a claim for waste, the plaintiff must have an interest in the property. <u>See</u> Restatement (Third) of

14    Prop. (Mortgages) § 4.6 (providing for remedies for waste by the mortgagor that are "available to

15    the mortgagee"). Here, the Court has granted summary judgment in Defendants' favor on Chase's

16    quiet title claim. Therefore, Chase no longer can assert an interest in the Property and may not

17    maintain its claim for waste. Summary judgment is granted in SFR's favor on Chase's waste claim.

18

19           **M. SFR's Motion to Expunge Lis Pendens**

20         SFR also moves to expunge the notice of lis pendens filed against the Property by Chase.

21    Under N.R.S. 14.015, the party who records the notice of lis pendens must "establish to the

22    satisfaction of the court either: (a) That the party who recorded the notice is likely to prevail in the

23    action; or (b) That the party who recorded the notice has a fair chance of success on the merits in

24    the action and the injury . . . would be sufficiently serious . . . ." N.R.S. 14.015(3). Here, the Court

25    has granted summary judgment in Defendants' favor on all of Chase's claims. Chase can no longer

26    demonstrate a likelihood or a fair chance of success on the merits of its claims. SFR's motion is

27    therefore granted and the notice of lis pendens is expunged.

28

**V.     CONCLUSION**

For the reasons discussed above,

**IT IS ORDERED** that Defendant SFR Investments Pool I, LLC's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 18), to which Defendants ATC Assessment Collection Group, LLC and The Preserves at Elkhorn Springs Homeowners Association filed a Joinder (ECF No. 23), is GRANTED. Summary judgment is granted in favor of Defendants on all claims asserted in the Complaint.

**IT IS FURTHER ORDERED** that Defendant SFR's Motion to Expunge Lis Pendens (ECF No. 19) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff JPMorgan Chase Bank, N.A.'s Counter-Motions for Summary Judgment (ECF Nos. 38 and 40) and Second Motion for Summary Judgment (ECF No. 69) are DENIED.

The Clerk of Court is instructed to enter judgment in favor of Defendants and close this case.

**DATED**: <u>July 28, 2016</u>.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**